347 So.2d 959 (1977)
Smith JOHN and Harry John
v.
STATE of Mississippi.
No. 49682.
Supreme Court of Mississippi.
May 11, 1977.
Rehearing Denied July 20, 1977.
*960 Edwin R. Smith, Philadelphia, for appellant.
A.F. Summer, Atty. Gen., by Catherine Walker Underwood, Special Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
SUGG, Justice, for the Court:
The defendants, Smith John and Harry John, were convicted of aggravated assault and sentenced by the Circuit Court of Leake County to serve two years in the penitentiary.[1]
The primary question is one of jurisdiction between the United States District Court and the Circuit Court of Leake County, Mississippi. Did the United States District Court have jurisdiction to try the defendants under the Major Crimes Act, 18 U.S.C.A. § 1153, or did the Leake County Circuit Court have jurisdiction to try the defendants under Mississippi Code Annotated *961 section 97-3-7(2) (Supp. 1976). Both courts could not have jurisdiction because the prosecution in each was based on the same acts of the defendants.
The errors assigned are: (1) The trial court erred in failing to sustain defendants' motion to dismiss after their prosecution in United States District Court resulted in a conviction of simple assault based on the same incident which resulted in their conviction in the Circuit Court of Leake County. (2) The trial court erred in denying defendants' plea of former jeopardy because they had been convicted in United States District Court for the same act. (3) The trial court erred in subjecting defendants to trial following their trial in United States District Court because their trial in the state court constituted invidious racial discrimination.
Defendants were convicted of simple assault in the United States District Court for the Southern District of Mississippi for violating 18 U.S.C.A. § 113 and were sentenced to serve ninety days and to pay a fine of $300.
Federal custody over the defendants was obtained through a habeas corpus ad prosequendum. Defendants' brief states that the defendants' misdemeanor conviction in the United States District Court has been appealed to the Fifth Circuit Court of Appeals. They contend that unless and until the United States District Court's conviction is overturned the state has no right to proceed with its prosecution on the indictments in the state court.
The United States District Court's judgment of conviction was entered December 15, 1975 before our decision in Tubby v. State, 327 So.2d 272 (Miss. 1976) and before the decision of the Fifth Circuit Court of Appeals in United States of America et al. v. State Tax Commission of State of Mississippi et al., 535 F.2d 300 (5th Cir.1976).[2]
Tubby, supra, involved the conviction of a Choctaw Indian for arson for burning a house owned by another Choctaw Indian located on land purchased for the Choctaw Indians with trust funds held by the United States. We held in Tubby that Mississippi has criminal jurisdiction over all crimes committed by Choctaw Indians within this state because: (1) "Indian Country" within Mississippi was extinguished by land patents issued to the individual Choctaw Indians under the terms of the Treaty of Dancing Rabbit Creek. (2) All Choctaw Indians residing within Mississippi have been made citizens of the state by terms of the Treaty of Dancing Rabbit Creek, by amendment to the Mississippi Constitution, and by Mississippi statutes. (3) The Choctaw Indians of Mississippi do not fall within the provisions of the Federal Indian Reorganization Act granting certain rights of home rule to Indians because they gave up their status as reservation Indians and became citizens of Mississippi before the enactment of the Indian Reorganization Act, §§ 1 et seq., 25 U.S.C.A. §§ 461 et seq. (4) Choctaw Indians became subject to Mississippi law when the United States Government issued patents to their land. (5) The courts of Mississippi have jurisdiction of Choctaw Indian citizens in the same manner and to the same extent that they have jurisdiction over other citizens of Mississippi.
Although the decision of the Fifth Circuit Court of Appeals in United States v. State Tax Commission, 535 F.2d 300 (5th Cir.1976) involved a tax question, the holding is persuasive on the issues involved in this case. The Fifth Circuit held:
[1] After the ratification of the Treaty of Dancing Rabbit Creek the Choctaw Indians who chose to remain in Mississippi were no longer an Indian Tribe, they were citizens of Mississippi, and they most assuredly were not wards of the United States. The only way they could reassume Choctaw tribal citizenship was to move to the Indian Territory.
As cited in the original opinion, a thorough discussion of this situation was authored by Mr. Justice Pitney in Winton v. Amos, 255 U.S. 373, 41 S.Ct. 342, 344, 65 *962 L.Ed. 684 (1921). That opinion of the Supreme Court sets forth in interesting detail the many unsuccessful efforts of the Mississippi Choctaws to reassume Choctaw citizenship without moving to the Indian Territory. See, also, Choctaw Nation v. United States, 119 U.S. 1, 7 S.Ct. 75, 30 L.Ed. 306 (1886).
.....
[2] In any event, this Treaty was made by and between the Tribe and the United States and both were bound by its terms. By remaining and accepting (or claiming later, as some did) the lands allotted to those who wished to stay, the individual Indian likewise bound himself to the provisions of the Treaty.
[3] The Treaty of Dancing Rabbit is a part of the Supreme Law, United States Constitution, Article 6, Clause 2, and it cannot be altered by an Act of Congress; Congress cannot obliterate the jurisdiction of Mississippi over its citizens.
This case simply does not fit into the extensive jurisprudential grooves developed with reference to Indian wards or those Indian Reservations which were established either by Treaty or created by Congress for those who never converted their Indian status to that of state citizenship.
.....
The Choctaw Indians of Mississippi do not live in Indian country. Except for that land patented to individual Indians under the terms of the Treaty (and not in trust) the Tribe sold all of its land to the United States in 1830. By 1850 virtually every acre of it had been patented to private purchasers by virtue of sales at the Land Offices in Columbus and Paulding. See DeCoteau v. District County Court for Tenth Judicial District, 1975, 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300. See also, Dillon v. Antler Land Company of Wyola, 9 Cir.1974, 507 F.2d 940, cert. denied, 421 U.S. 992, 95 S.Ct. 1998, 44 L.Ed.2d 482.
.....
[4] We adhere to the view originally entertained that the definition of the term "Indian" appearing in Section 19 in no way altered or amended the description of those entitled to organize under the terms of Section 16.
We also adhere to the opinion that:
(1) The Choctaw Indians residing in Mississippi in 1934 were not members of an Indian tribe. The tribe was in Oklahoma. The tribal status of the Mississippi Choctaws had been permanently extinguished by the 1830 Treaty of Dancing Rabbit Creek;
[5, 6] (2) Granting that Section 7 of the 1934 Act authorized the Secretary of the Interior to set up new Indian reservations, we think that the clear intent of Congress was to legislate for Indian tribes, not for individual Indians;
(3) We see nothing in the Acts of Congress conferring authority upon the Secretary of the Interior to create Indian tribes where none had theretofore existed. Under Section 16 only a tribe could organize for self-government, etc. Additionally, we think the purpose was to give the tribes some independence from the Bureau of Indian Affairs;
[7] (4) Nothing in the various Congressional enactments indicates a desire or purpose to abrogate the Dancing Rabbit Treaty;
[8] (5) Nothing in the various Congressional enactments indicates a desire or purpose to oust Mississippi of its jurisdiction over those who had been its citizens, so declared by Treaty, for over a hundred years.
Consequently, we are of the opinion that the jurisdiction of the State of Mississippi over its citizens of Choctaw Indian blood stands unimpaired. (535 F.2d at 302, 306).
In view of Tubby and United States v. State Tax Commission, supra, we are of the opinion that the United States District Court had no jurisdiction to proceed with the prosecution of the defendants under 18 U.S.C.A. § 1153 (Supp. 1976).
*963 In their second assignment of error defendants argue that they have been subjected to double jeopardy because they were convicted in the United States District Court under 18 U.S.C.A. § 1153 and under Mississippi Code Annotated section 97-3-7(2) (Supp. 1976) for the same act. The argument is without merit because former jeopardy does not exist unless the previous trial was before a court of competent jurisdiction. It has long been settled in this state that a party who has been tried and convicted by a court not having jurisdiction of the offense cannot plead former jeopardy if subsequently indicted for the same offense in a court having jurisdiction thereof. Montross v. State, 61 Miss. 429 (1883). We do not find any case in which the United States Supreme Court has addressed this question and none was cited in the briefs. However, the federal courts in the various circuits adhere to the rule expressed in Montross, supra. See cases annotated in West Federal Practice Digest, Criminal Law. In 22 C.J.S. Criminal Law § 244 at 643-644 (1961) the general rule is stated as follows:
Former jeopardy does not exist unless the previous trial was before a court of competent jurisdiction, and a judgment void for lack of jurisdiction is not a bar to a subsequent prosecution for the same offense. The court in which the prior acquittal or conviction was obtained must have been one having jurisdiction of the offense charged and also of accused, obtained by due process based on legal proceedings. However, the judgment of a court having jurisdiction is a bar to a subsequent prosecution for the same offense, even though the judgment is erroneous and voidable, or the court erred in exercising a discretion vested in it. The fact that a court having jurisdiction when the trial starts thereafter loses it by rendering judgment thereon on Sunday does not change the fact that accused had been placed in jeopardy. Where accused procured a prior conviction to be set aside on the ground that the court was without jurisdiction, he is estopped subsequently to assert, in support of a defense of previous jeopardy, that such court had jurisdiction.
The trial of defendants in the Leake County Circuit Court following a trial in the United States District Court did not amount to double jeopardy because the United States District Court did not have jurisdiction of the crime with which defendants were charged.
Defendants' third assignment of error is that their trial in state court constituted invidious racial discrimination and in their brief state the following:
Artis Jenkins, the victim of the allegedly unlawful assault which gave rise to both the state and the federal prosecutions, was a non-Indian. Both Smith John and his son, Harry Smith John, are full-blooded Choctaw Indians. The incident took place upon lands which are Indian country under federal law. As Indians accused of one of the crimes enumerated under the Major Crimes Act, Defendants were subjected to trial in federal court. 25 U.S.C. 1153; 18 U.S.C. 3242. Had the Defendants instead been non-Indians, they would have been subject only to state court jurisdiction. Clearly, then, if jurisdiction were found to be vested over defendants Smith and Harry Smith John so as to permit the state and the federal courts to proceed against them, they could be tried a second time for their assault against Artis Jenkins only because of their race. Subjection of the defendants to a second, state trial, therefore, is violative of the provisions of the Fifth and Fourteenth Amendments to the Constitution of the United States, in that it is invidious discrimination based upon race. So fundamental and self-evident is the proposition that it requires no further supporting authorities.
The fallacy of defendants' argument is that the United States District Court had no jurisdiction to try them under Major Crimes Act, 18 U.S.C.A. § 1153. There is no Indian country in Mississippi, the defendants are citizens of Mississippi *964 subject to its laws, and therefore are subject to prosecution in its courts. Defendants stated in their brief that their conviction in the United States District Court has been appealed to the Fifth Circuit Court of Appeals. If the Fifth Circuit should hold that the United States District Court had jurisdiction under 18 U.S.C.A. § 1153 and affirm their conviction, a conflict in decisions between the Fifth Circuit and this Court would result. This conflict could then be properly resolved in the United States Supreme Court.
The defendants are in the same position as any other defendant, regardless of race or color, who has been tried for a crime by a court which had no jurisdiction. We therefore reject this argument of defendants that they are victims of invidious racial discrimination because of their prosecution in the state court.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON and BROOM, JJ., concur.
WALKER, J., specially concurs.
LEE, J., took no part.
WALKER, Justice, specially concurring.
In view of this Court's holding in Tubby v. State, 327 So.2d 272 (Miss. 1976), I concur. However, I am still of the opinion that Tubby was erroneously decided.
NOTES
[1] The judgment of the circuit court was entered May 7, 1976 and each defendant was given credit on the sentence for eight months and eight days time served in jail. The crime for which defendants were convicted occurred on August 30, 1975 and apparently they were detained in jail from the time of their arrest following the commission of the crime until they filed an appearance bond in connection with their appeal to this Court on May 10, 1976.
[2] See decision of three judge panel in United States of America et al. v. State Tax Commission of State of Mississippi et al., 505 F.2d 633 (5th Cir.1974).